UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANNON O'NEILL,<br><br>  Plaintiff,<br><br>  v.<br><br>AVALARA, INC., BRUCE CRAWFORD, MARION FOOTE, EDWARD GILHULY, WILLIAM INGRAM, MARCELA MARTIN, SCOTT MCFARLANE, TAMI RELLER, BRIAN SHARPLES, RAJEEV SINGH, SRINIVAS TALLAPRAGADA, and KATHLEEN ZWICKERT,<br><br>  Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Shannon O'Neill ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Avalara, Inc. ("Avalara" or the "Company") and Avalara's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Vista Equity Partners Management, LLC through its affiliate Lava Intermediate, Inc. and its wholly owned subsidiary Lava Merger Sub, Inc. (collectively "Vista").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on September 12, 2022. The Proxy recommends that Avalara stockholders vote in favor of a proposed transaction (the "Proposed

1

Transaction") whereby Avalara is acquired by Vista. The Proposed Transaction was first disclosed on August 8, 2022, when Avalara and Vista announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Vista will acquire all of the outstanding shares of common stock of Avalara for $93.50 per share (the "Merger Consideration"). The deal is valued at approximately $8.4 billion and is expected to close in the second half of 2022.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Avalara management, as well as the financial analyses conducted by Goldman Sachs & Co. LLC ("Goldman"), Avalara's financial advisor, and potential conflicts of interest faced by Company insiders.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Avalara's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Avalara's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Avalara.

6.      Defendant Avalara is a corporation organized and existing under the laws of the State of Washington. The Company's principal executive offices are located at 255 South King

2

Street, Suite 1800, Seattle, Washington 98104. Avalara common stock trades on the New York

Stock Exchange under the ticker symbol "AVLR."

7.      Defendant Scott McFarlane has been a director of the since 2004. Defendant

McFarlane has served as Chief Executive Officer of the Company since 2007 and as Chairman of

the Board since 2014.

8.      Defendant Bruce Crawford has been a director of the Company since 2021.

9.      Defendant Marion Foote has been a director of the Company since 2011.

10.     Defendant Edward Gilhuly has been a director of the Company since 2011.

11.     Defendant William Ingram has been a director of the Company since 2020.

12.     Defendant Marcela Martin has been a director of the Company since 2021.

13.     Defendant Tami Reller has been a director of the Company since 2014.

14.     Defendant Brian Sharples has been a director of the Company since 2020.

15.     Defendant Rajeev Singh has been a director of the Company since 2017.

16.     Defendant Srinivas Tallapragada has been a director of the Company since 2021.

17.     Defendant Kathleen Zwickert has been a director of the Company since 2019.

18.     Nonparty Vista Equity Partners Management, LLC is a private equity firm focused

on investments in software, data, and technology-enabled companies. Vista Equity Partners

Management, LLC's has offices in Austin, Chicago, New York, San Francisco, Oakland, and Hong

Kong.

19.     Nonparty Lava Intermediate, Inc. is a Delaware corporation. Lava Merger Sub, Inc.,

is a Washington corporation and is a wholly owned subsidiary of Lava Intermediate, Inc. Both

Lava Intermediate, Inc. and Lava Merger Sub, Inc. are affiliated with Vista Equity Partners

Management, LLC.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

**FURTHER SUBSTANTIVE ALLEGATIONS**

**A. Background of the Company and the Proposed Transaction**

23.     Avalara services businesses with respect to tax compliance. In partnership with ERP, accounting, ecommerce, and other financial management system providers, Avalara provides cloud-based compliance solutions for various transaction taxes, including sales and use, VAT, GST, excise, communications, lodging, and other indirect tax types. Headquartered in Seattle, Avalara has offices across the U.S. and around the world in Brazil, Europe, and India.

24.     On August 8, 2022, the Company entered into the Merger Agreement with Vista.

25.     According to the press release issued on August 8, 2022 announcing the Proposed Transaction:

**Avalara to be Acquired by Vista Equity Partners for $8.4 Billion**

*Avalara shareholders to receive $93.50 per share in cash*

*Avalara to become a private company upon completion of the transaction*

**SEATTLE, WA — August 8, 2022** — Avalara, Inc. (NYSE: AVLR), a leading provider of tax compliance automation for businesses of all sizes, today announced it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data, and technology-enabled businesses, in partnership with institutional co-investors.

Under the terms of the agreement, Vista will acquire all outstanding shares of Avalara common stock for $93.50 per share in an all-cash transaction valued at $8.4 billion, inclusive of Avalara's net debt. The per share purchase price represents a premium of 27 percent over the Company's closing share price as of July 6, 2022, the last trading day prior to media reports regarding a potential transaction.

Founded in 2004, Avalara's success is built up on an extensive partner network; large tax content data and repository to help customers stay up to date on dynamic tax rules and regulations; and its cloud-native, end-to-end multi-product tax compliance portfolio. In partnering with Vista, Avalara will look to build on its successful platform by refining its go-to-market strategy, expanding its international workforce, streamlining its systems architecture, and continuing to pursue value-accretive M&A opportunities.

"For nearly two decades, Avalara has ambitiously pursued its vision to automate global compliance, making tax less taxing for businesses and governments around the world. As a leader in this category, we believe our continued investment in innovation and experience is exciting for our customers, partners, and employees. We are pleased to partner with Vista and will benefit from their expertise in enterprise software as we build and improve upon our cloud compliance platform," said Scott McFarlane, co-founder and CEO of Avalara.

"Vista has built a reputation as a preferred partner for founder-led, next-generation software companies," said Monti Saroya, Co-Head of Vista's Flagship Fund and Senior Managing Director. "We look forward to working with Scott and the entire Avalara team to advance their vision and continue delivering innovative solutions to customers."

"Avalara is a mission-critical platform serving customers in a variety of end-markets, including retail, manufacturing, hospitality, and software," said Adrian Alonso, Managing Director at Vista. "Avalara's solutions, its commitment to product innovation, and its network of extensive partner integrations, resellers, and accountants make it a true leader in the space."

**Transaction Details**

The transaction, which was unanimously approved by the Avalara Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Avalara shareholders and receipt of regulatory approval. Closing of the transaction is not subject to a financing condition.

## B.  The Materially Incomplete and Misleading Proxy

26.     On September 12, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

27.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Goldman's fairness opinion, Goldman reviewed "certain internal financial analyses and forecasts for Avalara prepared by its management, as approved for Goldman Sachs' use by Avalara." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Avalara's management provided to the Board and Goldman.

28.     Notably, Defendants failed to disclose: (a) Avalara's extrapolation of the "July Projections" for fiscal years 2026 through 2042 and explanation as to how management extrapolated the July Projections; and (b) the line item entries forming the basis of the calculation of;  (i) Non-GAAP Gross Profit; (ii) Non-GAAP Operating Income (Loss); and (iii) Unlevered Free Cash Flow.

29.     The Proxy similarly fails to disclose: (a) Avalara's extrapolation of the "May Projections" for fiscal years 2026 through 2042 and explanation as to how management extrapolated the May Projections; (b) the Company's unlevered free cash flows over the projection period; and (c) the line item entries forming the basis of the calculation of: (i) Non-GAAP Gross Profit, (ii) Non-GAAP Operating Income (Loss), and (iii) Unlevered Free Cash Flow.

30.     Furthermore, with respect to the Company's "NOL Forecasts," the Proxy fails to disclose the projected net operating loss ("NOL") carryforwards of Avalara for fiscal years 2026-2042.

31.     This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Goldman's Financial Analyses

32.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Proxy fails to disclose: (a) the unlevered free cash flows, including the unlevered free cash flows for fiscal years 2026 through 2042; (b) Alavara's terminal year unlevered free cash flow (less stock-based compensation expenses); (c) the Company's terminal values; (d) the key data, inputs, and assumptions forming the basis of the range of discount rates applied by Goldman; (e) the projected benefits of the Company's NOLs for fiscal years 2022 through 2042; (f) Avalara's total debt and debt-like items; (g) its unrestricted cash and cash equivalents; and (h) the Company's outstanding shares on a fully diluted basis.

33.     With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Proxy fails to disclose: (a) the Company's total debt and debt-like items for fiscal years 2022 to 2024; (b) Avalara's unrestricted cash and cash equivalents for fiscal years 2022 to 2024; (c) the Company's projected outstanding shares for fiscal years 2022 to 2024 on a fully diluted basis; and

(d) the key data, inputs, and assumptions underlying the discount rate applied by Goldman.

34.     With respect to the *Selected Transactions Analysis*, the Proxy fails to disclose: (a) the specific financial metrics and multiples for the transactions selected by Goldman; (b) the Company's total debt and debt-like items; (c) Avalara's unrestricted cash and cash equivalents; and (d) its outstanding shares on a fully diluted basis.

35.     With respect to the *Selected Public Company Comparables Analysis*, the Proxy fails to disclose the financial multiples and metrics for the companies selected by Goldman.

### *Materially Incomplete and Misleading Disclosures Concerning Potential Conflicts of Interest*

36.     The Proxy fails to disclose material information concerning potential conflicts of interest by Company insiders, specifically: (a) whether any of them obtained positions with the surviving corporation; (b) the specifics concerning any negotiations over employment and retention of company management that occurred between the Company and Avalara's officers, including who had those discussions, when they took place, and what was discussed; and (c) if any of Vista's proposals or indications of interest contained management retention in the surviving company or the purchase of or participation in the equity of the combined company.

37.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

38.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the

materially incomplete and misleading information discussed above.

39.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the
Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required
to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the
material information referenced above and contains the incomplete and misleading information
referenced above.

40.     Further, the Proxy indicates that on August 7, 2022, Goldman reviewed with the
Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion,
which was confirmed by delivery of a written opinion dated August 8, 2022, to the effect that the
Merger Consideration was fair, from a financial point of view, to Avalara stockholders.
Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material
information concerning Goldman's financial analyses which has been omitted from the Proxy, and
thus knew or should have known that such information has been omitted.

41.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks
an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to
prevent the irreparable injury that she will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth
herein.

43.     Defendants have filed the Proxy with the SEC with the intention of soliciting
Avalara stockholder support for the Proposed Transaction. Each of the Individual Defendants
reviewed and authorized the dissemination of the Proxy, which fails to provide the material

information referenced above.

44.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Avalara, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Avalara shares and the financial analyses performed by Goldman in support of its fairness opinion; and (iii) potential conflicts of interest by Company insiders.

47.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Goldman reviewed and discussed its financial analyses with the Board during various meetings including on August 7, 2022, and further states that the Board considered Goldman's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew

or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Avalara within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Avalara and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause

the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.       Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Avalara stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.       Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.       In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 23, 2022

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*